which is actually Walter Huryk versus Brother International. May it please the Court, on behalf of Mr. Huryk, Doug McNamara from Cohen-Milstein, may I reserve three minutes for rebuttal? Granted. Your Honors, this is a case about a New Jersey corporation that was hiding two different distinct defects in one of its consumer products which was selling nationally on behalf of a company called Brother Japan. Brother USA learned of one of these defects as early as 2002 and even brought it to the attention of Brother Japan. However, it did not bring it to the attention of its consumers until February of 2005 after Mr. Huryk had bought his machine. What's the standard of review here because I was left a little confused at least after I read the briefs for the first time. You maintain plenary in your standard of review section. Yes, Your Honor. Based upon this Court's decisions in Warner v. Stanton, based upon this Court's decision in Powers v. Lycoming, it's been plenary or de novo review on a choice of law decision. The appellee has pointed to a footnote in a 1986 case by this Court.  Blakeslee. Yeah. How do we just, how do we, where's our law right now? Well, the law here consistently with the exception of this one footnote has been plenary review, de novo review. I would submit though in this case much like Judge Berry talked about the last case not really being a night case, this isn't the case to decide it because even if it was clearly erroneous, it wouldn't make a difference here. Facts aren't in dispute. Facts are not in dispute. Mr. Huryk bought the machine in South Carolina, defense knew of the defect, the product, the decisions made in New Jersey. Well, I'm not so sure. I don't know. Didn't Judge Wolfson conclude that there was, gosh, I don't want to misquote it, but it was a pretty, basically it showed no evidence of any concealment. Well, the judge said that there was. If we view that through the prism of clearly erroneous, it doesn't look good for you I don't think. If I may, Your Honor, the judge said that there was no decision made in New Jersey and quite frankly that can't possibly mean there was no decision made in New Jersey. Of course there was a decision because she then cites to the decision to tell Brother Japan, the decision to eventually tweak the warranty. If there was decisions made, I believe the interpretation is that there was nothing that would violate the New Jersey Consumer Fraud Act. And you're not arguing that there's any dispute in the facts, so I don't know why we have to go and look for a dispute in the facts if the appellant isn't even suggesting that there's one. No, we're saying that the court misinterpreted the New Jersey Consumer Fraud Act. We believe the court made three errors below, the third of which is in looking at the New Jersey Consumer Fraud Act and looking at the actions taken by Brother and informing Brother Japan of the defects and then sitting back and letting them sort it out, that somehow that ceased its obligations to the New Jersey Consumer Fraud Act. And we think that's wrong as a matter of law, not as a matter of fact. The other two errors, which go right to the issue of choice of law, is the district court below applied Section 148.2, however treated every single one of the contacts as equal, not weighting as instructed and as such did not give proper credit to Factor C, which is where the fraud occurred. This is a case where the entire fraud occurred beginning to end in Bridgewater, New Jersey with the decision not to reveal information about material defects. The entire fraud? Entire fraud. Nothing that Mr. Heurich saw when he bought this machine in South Carolina at Office Depot is at issue in this case in terms of the fraud. No reliance? No reasonable reliance is required? There's no reliance required with the statute, but also there's no reliance done in South Carolina where he bought it. This isn't a situation where he saw something on a tag or he saw some marketing materials made by Brother. As he said, he saw the price, he competed at other machines, and it seemed to be cheaper, so he bought it. What about his reliance on the limited warranty? That was in South Carolina. Yeah, that's what I'm asking. We didn't make a warranty claim in this case. There is no reliance on the warranty. We actually have not made any warranty claims whatsoever in this case. What are the elements of your state law claim? The elements of our state law claim is that defendants deliberately intended that he rely on a material omission effect. Say that again? You know, this is one of the reasons why I bring the statute up with me because sometimes when I summarize it, it gets a little clunky. Under 56A2 of the New Jersey State Statute Sanitated, the Consumer Fraud Act, it is fraud, consumer fraud, when with relation to a sale or distribution, Brother is the U.S. seller and distributor of Brother Japan products, to omit any material fact with intent that others rely upon such concealment, suppression, or omission in connection with the sale. In this case, the material facts were two defects which Brother was aware of. One they were aware of before he purchased his machine in 2003, and the other they were aware of while he was still buying his ink after 2003, and that would be the ink purge defect, which affected 100% of their machines of the series he purchased. Those frauds took place in New Jersey when they decided not to tell their customers about these facts. The second defect, the ink purge defect. Well, hold on. You're saying when they decided. Now, you've got to be specific. You're saying Bick made the decision. I'm going to say Charles Stadler made the decision because that's what the record reflects. Charles Stadler was Vice President at Bick in USA, in Bridgewater, and he had the final call. He had the final call in terms of extending warranties secretly to certain folks. The machine came out of Japan, out of Bell. The one-year, 90-day, one-year warranty came out of Japan. The decision to extend. There are things that came out of Japan. There were. And that's what the district has done, and you don't disagree with that. I don't. We disagree, though, that they matter in this case. The fact that the warranty was written in a manual that came out of Japan or the machines were designed and manufactured in Japan is not relevant to the choice of law issue here, where the choice of law issue is, where did the fraud occur? Now, Brother Japan may have also been guilty of a fraud, but they're not guilty. They're not a defendant here. Brother USA is, and they are responsible to the U.S. customers. They had the obligation under New Jersey law. Mr. Couric's claim is he thought, he believed that the machine, for lack of a better word, should have lasted five to seven years. Well, I mean, that's his claim. It's not subjective in the sense that Brother's own specifications call for five years or 50,000 pages. This isn't sort of a situation where there's a machine, it's going to wear down, everybody knows it's going in. This is one where Brother itself anticipated five years out of this machine. Surveys have been done, consumer surveys, which support the number that Mr. Couric gave. Brother was aware of these surveys. This is information that Brother knew, and this is not a situation if somebody picked a number out of the sky. The warranty, you say, one year, and then it was extended in New Jersey for three years or whatever. This is not like the Hope Diamond. The machine in 2003 sold for, I think, $125. Yes, Your Honor. So you're not, and it has lasted about three years instead of five, he hoped for or believed. Is that the claim? That is the claim, Your Honor. By extra ink. Yes, and he had to purchase over 20 cartridges within the three years he had the machine because of the defect. Your Honor, of course, the amount of money at stake is not great, which is why it's a Consumer Fraud Act, which is also why it should have, the court should have considered under Section 6, which it did not, it cited to in reciting the statute, but did not cite to once Section 6 of the principles, therefore failing the Camp J.C. test. The court did not cite to the Section 6 principles, which talk about the underlying law at issue. The underlying law at issue is consumer fraud. Are they required to cite to Section 6? I mean, the New Jersey Supreme Court decision seems to say it's through the prism of UV-148 through the prism of 6. I mean, is it really error? I mean, maybe she did consider Section 6. If she considered, she did not mention her decision. And the Camp J.C. did, in fact, itself consider Section 6 when it decided to apply Pennsylvania law in that case because the underlying issue there was compensation in a personal injury case, and if New Jersey law applied, that plaintiff was not going to get compensated. I'll give you Your Honor's example. Just last month, Judge Arenas, in a case called Kalo v. Springett, which wouldn't be cited because it just happened in December 2012, had to do with the national class claim Casey inherited from Judge Wilson, where there was allegations that the defendant put a bug in its own software, which would cause the consumers to have to replace it in a few years. The judge applied 148-2, tallied up the factors, and said, well, on mix, it's not clear what would happen. Then goes to Section 6, and upon applying Section 6, concluded with a consumer fraud, the underlying concern here is to make sure there's compensation and deterrence. And New Jersey has the strongest interest in making sure its corporate citizens don't lie abroad throughout the country. It's the same reasoning that Judge Debevoise didn't tally. Analytically, because our cases, as I've noticed, at least our unpublished ones, seem to be a little bit inconsistent, maybe. Yes, Your Honor. Are you arguing that in every case you've got to go to 148 and then, or, you know, the substantive section, and then also consider the factors in Section 6? Yes, Your Honor, and that's exactly what 148 says. That's exactly what it says in the text of 148-1 and in the comments of Section 2, that the relative importance in a given case should be determined in light of the first law principle stated in Section 6, with emphasis upon sought to be achieved by the relevant tort rules. That's what they're supposed to do, and the Court did not do that here, did not go through Section 6 at all. Had the Court gone through Section 6 at all and considered, not where the manual was done, but the facts that happened here in this case in terms of what the defendant knew and when, and what the defendant disclosed, it's clear that New Jersey has a stronger interest. 148-2 says, if any two of the 148-2 contacts, apart from domicile, state of incorporation, place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues. It doesn't say go to six. It's talking about the contacts under two. Okay, I'm looking at the comment on Section, subsection 2 that's contained in the restatement on Section 148, which states to look at the principles in Section 6. I'm also looking at comment H-2, Section 148-2, which talks about the place where the defendant made the false representations as being as important of a contact in a fraud case as where the injury occurred. So the factors should not be considered as co-equivalent. They're supposed to be weighted. If you just simply apply up the numbers and tally it up, you're back to Lex Loci. We're going to be right back to where the Supreme Court in New Jersey rejected in Camp J.C. of where did you buy it, where did the injury occur, and the court thought that was not sufficient. There needed to be consideration of which state has a more significant relationship. That's the name of the test. Here it's New Jersey because New Jersey is the only state here that has the significant interest in making sure that its New Jersey corporations don't lie in other states, don't misrepresent their products, don't hide material information. We believe these facts were very, very material. In fact, the odd part of the ink purge defect, which they still have never disclosed, is they make money off this defect because your cartridge lasts six to seven months instead of one to two years. You end up buying more cartridges. The court should have weighted where the fraud was located. And this goes to Judge Chagraris. You pointed out that there is inconsistency. One other way to clarify things, and I point to what Judge Tessler did in Agostino, too, when he looked at what Judge Debevoise did in Tell-Aid. He said, well, there's a big difference, he noted, between a case where you had medical bills you were going to read in a fraud where you're supposed to read the misrepresentation in the state you receive it and one where there's omissions directed nationally from the headquarters of a defendant. In this case, it's an omissions case. This is why it's also different from Cooper v. Samsung where a person walks into a store in Arizona, I want to get that 1080 TV. It turns out it can't do what it said it could. This is one where Mr. Shurick wasn't misled when he bought the machine. He wasn't told important information which would have affected the purchase and would have affected his decision and whether or not he would have found out about a fix that they made available on the site, on the download, on their website, but never allotted any other customers to it. And that's why this case should be different. That's why the court should send this case back to Judge Wolfson. I see I'm out of time. Thank you. We'll have you back on rebuttal. Mr. McNamara. Mr. McDonald? Good morning, Your Honors. Michael McDonald on behalf of defendant Brotherton National. Does everybody agree on the facts as to what the district court did relative to decisions made in New Jersey? That is correct, Your Honor. In fact, one very important concession you heard both in the briefs and today is that there's no dispute about the facts. And here's what the court below said about the facts. A thorough review of the extensive factual record reveals no omissions by BIC in New Jersey. If there are no omissions of material fact in New Jersey, then what is the basis of the contacts in New Jersey? There simply are none. The district court here wrote a very thorough decision analyzing all of the contacts in New Jersey, the contacts in Japan, and the plaintiff's claim. This case is a lot like the Cooper case from this court where the plaintiff went in and purchased television. The plaintiff was from Arizona. The court said the transaction in question, there's no relationship to New Jersey. This case is no different. There are two other cases involving Samsung, which are virtually identical to the facts of this case. Both involve claims that printers didn't work as represented and that the plaintiff, I'm sorry, the defendant, Samsung, had failed to disclose defects in the printers, manufacturing and or design defects. That's the Chrysler case and the Knox case. In both of those cases, we had plaintiffs from foreign jurisdictions who came to New Jersey looking to sue under the New Jersey Consumer Fraud Act. This case is no different. The plaintiff is from South Carolina. He purchased his printer in South Carolina. He used his printer in South Carolina. He bought ink cartridges in South Carolina. And when he called his lawyer, the class action lawyer, to join the lawsuit from South Carolina, he then threw his printer away in South Carolina after speaking with counsel. So to suggest that New Jersey has the most significant relationship in this lawsuit? Will you take those facts then and trace us through the analysis that we're required to take under the restatement, the factors that we ought to apply for purposes of most significant relationship? Okay. Actually, the issue before this court is actually one that's very narrow. Because three of the factors are conceded, right? Exactly, Judge. The first question is what section of the restatement applies. And the plaintiff argued Section 148-2 applies. The court agreed. The next step is determining if there's a conflict. The plaintiff considered there was a conflict. So now we go to the next step in the analysis, which is to evaluate the factors. Factors A, B, and E of the restatement, the plaintiff acknowledges all of those factors point to application of the plaintiff's law because the plaintiff was from South Carolina, purchased in South Carolina, and so forth. Some of the other factors, plaintiffs say, are neutral. The only factor in dispute here is factor C, and that is the place where the representations were made. And what the court said in its opinion, and I counted this, and the court stated this four separate times during the opinion, that there was no evidence whatsoever in the record to support the plaintiff's claims that there were any omissions of material fact by brother. And so what the plaintiffs are asking this court to do is to make new law under New Jersey law. What the plaintiffs want is a law that says if a plaintiff from out of state sues a company in New Jersey, then the New Jersey Consumer Fraud Act applies because the state's interest in deterrence supersedes all of the other factors. And that's simply not the law. Well, that was the conclusion reached by Judge Debevois in that opinion. But even that opinion is very distinguishable from this case. In the TeleAid case, there were 10 separate class action lawsuits that were combined in an MDL. One of those class action lawsuits involved plaintiffs from New Jersey. So even in that case, at least you had plaintiffs from New Jersey who could prevail under the New Jersey Consumer Fraud Act. Can we get to an analytical point? You in your brief also cite Section 6. I'm sure you read the district court opinion quite closely. Judge Wolfson did not cite Section 6. Is that an error? No, I don't think that's an error, Your Honor, because I think what the court did in the opinion was, as you suggested earlier, was to, and this is evidenced by the Kent J.C. case, is to view the factors of Section 2 through the prism of Section 6. And what the court determined was, based upon a very complete factual record, that there were no omissions whatsoever, that any conduct that has been complained of here, which are product defects for a product that was manufactured in Japan, and a product that the manufacturer in Japan did investigation in Japan  and what occurred in New Jersey was BIC extending warranty protection for its customers and actually implementing countermeasures for its products. Well, let me go back to what I was asking. I mean, if we write an opinion on this, I mean, it's one thing to say, to look at it through the prism of, and yet, as your adversary pointed out in the New Jersey Supreme Court case, they went over the substantive section, I think it was 145, and Section 6 factors. Do we, is it accurate to advise the district courts in our circuit that that's what ought to be done? We look first at the substantive section and then Section 6? I think that would be, that would certainly be more complete if a court was required to do that. I'm not so sure that the Kent J.C. case directs courts to actually state which of the Section 6 factors are being applied. I think the court suggested that these are considerations that must be given. And in this particular case, when the facts are so one-sided, every single factor, every single factor of Section 2 points to the application of the law of the plaintiff's home state. And in that instance, I don't think it would make that much of a difference to actually go through and cite the factors. Within Section 6, the finding as to the context makes the answer as to certain of the factors under Section 6 almost without doubt. I agree with you, Your Honor. It certainly is incorporated in the analysis of considering all those factors under Section 2, particularly Section C. If we look at Section 6, what it does is bolster the finding, or what could be other, totally just bolsters the findings as to the context. That's correct, Your Honor. And there's simply nothing in Section 6 that would cause this court to be able to conclude that Judge Wilson committed an error of law. Virtually every single case that has come down from the district court in the last two years has adopted this type of analysis. And all the cases that are said in our brief support the result that was given by Judge Wilson in her opinion. Thank you. We have nothing further. Thank you very much, Your Honor. Mr. McNamara, rebuttal? Thank you, Your Honors. First off, just to clear up something, New Jersey Supreme Court has made clear they have absolutely no problems with out-of-state plaintiffs suing under the New Jersey Consumer Fraud Act. They made that clear in the case Real v. Radar Wheels. So this is not asking for new law to have New Jersey Consumer Fraud Act apply to a New Jersey company when an out-of-state plaintiff sued. It's not new law at all. It's actually been done for quite some time. And the other thing I wanted to clear up is the factors that are listed here are listed with the preface of among others. These are factors that are to help the judge through the guideposts. But nowhere does Section 148 suggest that they're exhaustive or they're exclusive. And, again, they're not supposed to be interchangeable. They're supposed to be weighted. Now, the disagreement of where the fraud occurred, there is nothing that happened in South Carolina that suggests the fraud occurred there. That's one of the facts that we submit. The idea that nothing happened in New Jersey is completely belied by the record. In New Jersey, this defect was learned. In fact, the first fault report for the printhead was by Brother USA in August of 2002. Brother was aware. And the first ones that noticed the swaps, the increased swaps dealing with the printhead error, they did alert Brother Japan. And then they sat and waited for Brother Japan to fix it. The problem is they also sold the machines to United States customers. They have an obligation. They can't simply sit back and say we suffice our obligation by telling the parent corporation, rake in the money, and then if people call up and complain, ask Brother Japan to reimburse them. That's what Brother USA did here. That's a violation of the New Jersey Consumer Fraud Act. Also in New Jersey, other contacts include that they didn't just sit by and do nothing in the investigation. They sent printheads. They also were the first, they also were the brother subsidiary that tested the InkPurge fix when it came up. And they found that there was a difference of about 29 pages as a result of the two different InkPurge softwares. They also put incomplete details on its website. The website was controlled in New Jersey. On that website, they would put a frequently asked question, what does ME-41 mean? The frequently asked question would answer unplug your machine and call Brother. What it didn't say is, by the way, we have a defect, which is our number one quality issue, a catastrophic quality issue, a defect rate so high they won't even let us put it in public. And we know about this and we have no idea how to fix it yet. That's what they knew in December of 2003 when Mr. Heurich bought his machine. They also did what we call silent recall. Bigger corporate clients who had these machines, instead of losing them as customers, Mr. Staudter proactively went out and replaced their machines before bad things happened to him. Mr. Heurich as a sole consumer didn't have that opportunity. And most significantly, the decision not to tell was made in Bridgewater, New Jersey. And that's where, in a deliberate omissions case, the fraud occurs. That's what distinguishes this from the fraudulent misrepresentation case. And if you look at a lot of those sites that Mr. McDonald referred to where courts have gone the other way, those are all misrepresentation cases where there is marking material issue, which were read at point of purchase. There's no point of purchase issues here. The court hasn't asked anything about the alternative grounds the appellees put forward, Perkins or Allman. I assume that if the court has any questions, I'm happy to ask that. I believe our brief state is why we think those are unwise to be followed. Thank you, Your Honor. Thank you very much. Thank you both, counsel, for your helpful briefing.